## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Steven Benjamin Schwarz, MD,

              Plaintiff,

                      Case No. 1:18-cv-1142-MLB

v.

Georgia Composite Medical Board,

              Defendant.

_____/

## **OPINION & ORDER**

Plaintiff Steven Benjamin Schwarz, MD, brings this pro se action against Defendant Georgia Composite Medical Board under Title II of the Americans with Disabilities Act ("ADA"). Defendant moves to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim. (Dkt. 36.) The Court grants Defendant's motion and dismisses this case for lack of subject matter jurisdiction. As a result, the Court also denies as moot the other motions pending in this case: Plaintiff's Motion for a Settlement Conference (Dkt. 29), his Motion for an Injunction (Dkt. 45), and his Motion to Transfer to Alternative Dispute Resolution Center (Dkt. 51).

## I.     Background

Plaintiff is a psychiatrist who suffers from bipolar disorder.  (Dkt. 28 at 1.)  In 2009, he surrendered his medical license after the DeKalb County Probate Court declared him mentally incompetent and appointed a guardian for him.  (*Id.*)  In 2013, the Probate Court terminated Plaintiff's guardianship after finding that he had "sufficient capacity to make or communicate significant responsible decisions" about his health, safety, and property.  (*Id.* at 9–10.)  Plaintiff then applied for reinstatement of his medical license.  (*Id.* at 1.)  Defendant denied Plaintiff's application because he failed a competency exam known as the "SPEX."  (*Id.*)  In November 2017, Plaintiff retook and passed the SPEX exam.  (*Id.* at 2.)  Shortly thereafter, he again applied for reinstatement of his medical license.  (*Id.*)

Plaintiff filed this lawsuit in March 2018 while his reinstatement application was still pending.  (*Id.*)  He claimed Defendant functionally rejected his application by "tabling" it "indefinitely," in violation of the ADA.  (Dkts. 1 ¶ 16; 16 ¶¶ 1, 5–8, 13.)  Just three months later, however, Defendant reinstated Plaintiff's medical license pursuant to a consent agreement signed by the parties.  (Dkt. 28 at 20–24.)  Plaintiff then filed

other documents purporting to challenge the terms of the consent agreement, including its requirement that Plaintiff (for at least one year) "only practice medicine in the same office as and under the direct supervision of a Board approved psychiatrist" ("Supervision Requirement"). (*Id.* at 21; *see* Dkts. 20; 22.)[1]

In February 2020, the Court ordered Plaintiff to file a single amended complaint consolidating and clarifying his allegations and claims. (Dkt. 27 at 1.) Plaintiff has now done so. (Dkt. 28.) His amended complaint says Defendant violated Title II of the ADA by requiring him to comply with the Supervision Requirement. (*Id.* at 2–3, 8.) He seeks damages and asks the Court to terminate the Supervision Requirement. (*Id.* at 8.)[2]

---

[1] The agreement says Plaintiff can petition Defendant to terminate this requirement once he has "been under direct supervision for a period of one (1) year." (Dkt. 28 at 23.) Plaintiff has not practiced psychiatry since his license was reinstated, and he has not petitioned Defendant to lift the Supervision Requirement. (*See* Dkts. 36-1 at 7 n.3; 43 at 9; 50 at 4.)

[2] Plaintiff's complaint alleges other potential misconduct, but his briefing and requested relief both confirm he is focused only on the Supervision Requirement. (*See, e.g.*, Dkts. 28 at 8; 46 at 5.) To the extent he includes allegations and theories in his briefing that do not appear in his complaint, those allegations and theories do not change the operative claims in this case. *See Garcia v. Diaz*, 752 F. App'x 927, 929–30 (11th Cir. 2018) ("We do not consider, however, new factual allegations that

Defendant moved to dismiss in April 2020. (Dkt. 36.) It says Plaintiff's request for relief from the Supervision Requirement is moot because his medical license has now lapsed, meaning he has no right to practice medicine at all — with or without the Supervision Requirement. Defendant also says Plaintiff's damages request is barred by sovereign immunity under the Eleventh Amendment. Finally, Defendant says Plaintiff's claims fail on the merits even if the Court has subject matter jurisdiction over this case.

## II.   Discussion

### A.   Plaintiff's Request for Relief from the Supervision Requirement

#### 1.   Legal Standard

Article III of the Constitution limits the subject matter jurisdiction of federal courts to "actual, ongoing cases or controversies." *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 915 (11th Cir. 2018). To invoke this jurisdiction, "a plaintiff must show (1) [he or she] has suffered an injury in fact that is (a) concrete and particularized and

_____

Garcia raises in his brief on appeal but failed to plead in his Complaint."); *Morgan v. Dick's Sporting Goods, Inc.*, 359 F. Supp. 3d 1283, 1292 n.4 (N.D. Ga. 2019) ("A plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss.").

(b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "[A] plaintiff must demonstrate [these elements] for each claim he [or she] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

Plaintiff's Article III injury "must be extant at all stages of review, not merely at the time the complaint is filed." *Checker Cab Operators*, 899 F.3d at 915. "If the injury ceases, or is rendered unamenable to judicial relief, then the case becomes moot and thereby incapable of further Article III adjudication." *Id.* "Thus, even a once-justiciable case becomes moot and must be dismissed when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1255 (11th Cir. 2017). Put another way, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case

5

is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).  "[D]ismissal is required because mootness is jurisdictional." *Id.*

### 2.   Analysis

Plaintiff seeks "relief [from] the requirement for monitoring by another psychiatrist contained in" his consent agreement.  (Dkt. 28 at 8.) Defendant claims this request is moot because Plaintiff's medical license has now been revoked.  The Court agrees.

Plaintiff's medical license expired on December 31, 2019.  (Dkt. 36-2 at 1.)  He had until March 31, 2020 to renew it.  Ga. Comp. R. & Regs. 360-2-.05(3) ("Licensees have the right to obtain a late renewal of their licenses during the three (3) month period immediately following the expiration date.").  He did not do so.  (Dkt. 36-2 at 1.)  This resulted in the "revocation of [his] license . . . subject to reinstatement in the discretion of the board."  O.C.G.A. § 43-34-8(m).  As Plaintiff concedes, Defendant has not reinstated his license, which means he is no longer

authorized to practice medicine.  (*See* Dkt. 50 at 4 ("Plaintiff's license is now in revocation.").)[3]

Because Plaintiff now lacks a valid medical license, it makes no difference whether he is subject to the Supervision Requirement or whether the Court grants his request and terminates that provision.  In either case, he cannot practice medicine at all.  Put differently, since he cannot practice medicine, it makes no difference whether the Supervision Requirement remains or not.  The requirement does not affect his practice of medicine and, as a result, a decision by this Court terminating the Supervision Requirement will also have no effect on him.  It is not even clear the Court could take any action towards a license that has expired.  Although Plaintiff applied for reinstatement in November 2020, there is no evidence his application will ever be granted, much less that it will be granted anytime soon.  (Dkt. 60.)  On the contrary, Plaintiff has said his license will "likely" remain lapsed (absent judicial intervention)

---

[3] *See* Ga. Comp. R. & Regs. 360-2-.05(4) ("The Board shall administratively revoke any license not renewed prior to the expiration of the late renewal period.  Such revocation removes all rights and privileges to practice medicine and surgery in this State."); https://gcmb.mylicense.com/verification/ (showing Plaintiff's license as "lapsed").

including because Defendant "could again delay indefinitely reinstating Plaintiff's license or even permanently deny reinstatement." (Dkt. 50 at 4, 6); *see* Ga. Comp. R. & Regs. 360-2-.07(6) ("Reinstatement of the license is within the discretion of the Board."). Moreover, even if Plaintiff's license *was* reinstated, the Supervision Requirement would still be irrelevant because it explicitly applies only to Plaintiff's 2018 reinstatement and would thus be superseded by the terms of any subsequent reinstatement. (*See* Dkt. 28 at 21.) Maybe a new reinstatement would include the same requirement, but maybe not.

Because Plaintiff asks the Court to terminate the Supervision Requirement, and because that relief "would no longer have any practical effect on [his] rights or obligations," the Court lacks the ability to give him "meaningful relief" and his request must be dismissed as moot. *Flanigan's Enters.*, 868 F.3d at 1264; *Ashcroft*, 273 F.3d at 1336.[4]

---

[4] To the extent Plaintiff claims his license should not have been revoked, he offers no evidence or authority in support of that assertion. Nor does he explain how an improper revocation would save this case from mootness.

## B.    Plaintiff's Request for Damages

Plaintiff seeks damages under Title II of the ADA on the ground that Defendant functionally prevented him from practicing medicine by requiring him to comply with the Supervision Requirement.   Defendant says Plaintiff's damages claim is barred by sovereign immunity.   The Court again agrees with Defendant.

"Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."   *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013).   This bar is jurisdictional.   *See Omanwa v. Catoosa Cnty.*, 711 F. App'x 959, 961–62 (11th Cir. 2017) ("The Eleventh Amendment prohibits federal courts from exercising subject matter jurisdiction over a lawsuit against a state.").   The parties do not dispute that Defendant, as a "state agency," is an arm of the state.   O.C.G.A. § 43-34-6(a); *see Omanwa*, 711 F. App'x at 962 ("Eleventh Amendment immunity extends to state agencies and other arms of the state."); *see also Wood v. Jackson Hosp.*, 2018 WL 4655740, at *1 (M.D. Ala. Sept. 27, 2018) ("assuming the state medical board is an arm of the State" for the

purposes of sovereign immunity).[5]   Nor do they dispute that Georgia has not waived immunity for ADA suits.   *See, e.g.*, *McCauley v. Georgia Superior Court in Bibb Cty.*, 2011 WL 13176722, at *7 (N.D. Ga. Feb. 14, 2011) ("Georgia has not waived immunity for claims under the ADA."). Thus, the only question is whether Congress has validly abrogated sovereign immunity for Plaintiff's Title II ADA claim.   *See Wallace v. Georgia Dep't of Transp.*, 2005 WL 2031111, at *15 (M.D. Ga. Aug. 23, 2005) ("Neither party has argued that Georgia has waived its Eleventh Amendment immunity for ADA cases.   Thus, this analysis shall focus on abrogation.").

"The only constitutional authority Congress may invoke in abrogating Eleventh Amendment immunity is [Section] 5 of the Fourteenth Amendment." *Nichols v. Ala. State Bar*, 2015 WL 1710125, at *3 (N.D. Ala. Apr. 15, 2015); *see Nat'l Ass'n of the Deaf v. Florida*, 945 F.3d 1339, 1347 (11th Cir. 2020) ("Congress has the power to abrogate

---

[5] Georgia law defines Defendant as an "independent state agency attached to the Department of Community Health for administrative purposes." O.C.G.A. § 43-34-6(a). The Department of Community Health is responsible for Defendant's budget. *Id.*   Defendant's members are appointed by the Governor and confirmed by the Senate, *id.* § 43-34-2(a); they "take the constitutional oath of office," *id.* § 43-34-4; and they can be removed by the Governor, *id.* § 43-34-2(d)(2).

Eleventh Amendment immunity pursuant to its powers under Section 5 of the Fourteenth Amendment."). Section 5 authorizes Congress to enact "appropriate legislation" to "enforce" the substantive provisions of the Fourteenth Amendment, including the Due Process and Equal Protection Clauses. *Nat'l Ass'n of the Deaf*, 945 F.3d at 1347; *see* U.S. Const. amend. XIV, § 5. This enforcement power is "broad." *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). Obviously, it allows Congress to abrogate sovereign immunity for "state action that actually and independently violates the Fourteenth Amendment." *Nat'l Ass'n of the Deaf*, 945 F.3d at 1348 n.2. But it also allows Congress to "enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Lane*, 541 U.S. at 518; *see id.* (Section 5 gives Congress "the authority both to remedy and to deter violation of rights guaranteed by the Fourteenth Amendment by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text"). This prophylactic legislation may not, however, "work a substantive change in constitutional protections." *Id.* at 520. "Accordingly, [Section] 5 legislation reaching beyond the scope of [Section] 1's actual guarantees

must exhibit congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 365 (2001).

The Supreme Court has established a three-part test to determine whether Congress validly abrogated sovereign immunity for a Title II ADA claim. Under this framework, the Court must determine "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see Miller v. King*, 449 F.3d 1149, 1150 (11th Cir. 2006) ("[I]t is important for lower courts to [apply this test] on a claim-by-claim basis."); *Atchison v. Bd. of Regents of the Univ. Sys. of Ga.*, 2014 WL 12013430, at *4 (N.D. Ga. Nov. 13, 2014) ("The Court in *Georgia* set forth a three-part test to determine whether a plaintiff may sue a state for money damages under Title II of the ADA.").

Plaintiff's claim fails under the first prong of the analysis if he has not shown a Title II violation. *Atchison*, 2014 WL 12013430, at *4.

12

Congress validly abrogated immunity under the second prong if Defendant's misconduct violated the Fourteenth Amendment. *Id.* Otherwise, abrogation is proper only if Plaintiff satisfies the third prong, which involves a further multi-step inquiry described below. *Id.*

### 1.   Whether Defendant Violated Title II[6]

Plaintiff claims Defendant violated Title II of the ADA by requiring him to comply with the Supervision Requirement. (*See, e.g.*, Dkts. 28 at 2–3, 8; 46 at 5.)

> In order to state a Title II claim, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).[7]  If a Title II plaintiff seeks damages, as Plaintiff does here, he must also show

---

[6] The Court in this section considers whether Plaintiff has plausibly alleged a Title II violation under the pleading standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[7] Title II states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

"intentional discrimination," which is an "exacting standard" and "requires a showing of deliberate indifference." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).

Plaintiff has not established a Title II violation for at least two reasons. First, Defendant could not have discriminatorily imposed the Supervision Requirement on Plaintiff because Defendant did not impose the requirement at all; Plaintiff voluntarily agreed to it. Both parties signed the consent agreement containing the Supervision Requirement. (Dkt. 28 at 24.) Plaintiff certified that he read and understood the agreement, consented to it, and entered into it "freely, knowingly and voluntarily." (*Id.* at 23–24.) The fact that Plaintiff has now changed his mind and no longer wants to comply with the Supervision Requirement does not make that requirement discriminatory. Defendant is simply holding Plaintiff to the agreement he signed.

Even assuming Defendant unilaterally imposed the Supervision Requirement, Plaintiff has not alleged it did so "by reason of" his disability or with discriminatory intent. The consent agreement does not tie the Supervision Requirement to Plaintiff's disability. It has another requirement that seems tied to his disability, specifically the

14

requirement that he participate in psychotherapy.  (Dkt. 28 at 22.)[8]  But, nothing in the agreement suggests the Supervision Requirement arose from his disability, and Plaintiff does not allege any facts that plausibly suggest that connection.[9]  Georgia law also explicitly allows Defendant to "impose any remedial requirements" on reinstated doctors who have not practiced medicine for at least thirty months.  Ga. Comp. R. & Regs. 360-2-07.(3).   When Defendant reinstated Plaintiff's license, he had not practiced medicine for more than *nine years*.  (Dkt. 28 at 20.)  This long period of inactivity presents an "obvious alternative explanation" for requiring Plaintiff to work under the supervision of another psychiatrist during his first year back in practice.  *Iqbal*, 556 U.S. at 682 (intentional discrimination was "not a plausible conclusion" in the light of an "obvious alternative explanation").   The plausibility of this explanation is only enhanced by the terms of the consent agreement, which require

---

[8] Plaintiff does not challenge this provision as violating the ADA.

[9] The closest Plaintiff gets is his allegation that Defendant "issues Consent Orders to mentally handicapped physicians with a history of psychiatric treatment which are in fact restricted medical licenses that target mentally handicapped physicians for elimination from the profession."  (Dkt. 28 at 4; *see also id.* at 3, 6–7.)   But Plaintiff offers insufficient factual support for this general allegation and he does not tie it (or others like it) to his own consent agreement.

Plaintiff's supervisor to "function as an educational preceptor" and to submit reports on Plaintiff's "medical knowledge" and the quality of his work.   (Dkt. 28 at 21–22.)   This suggests Plaintiff's supervisor was appointed as a "remedial" measure rather than a mental health one.   In other words, there are good reasons to think Defendant would still have required Plaintiff to comply with the Supervision Requirement even if he did not suffer from bipolar disorder (or some other alleged disability).   In the light of this, any conclusory suggestion in the complaint that Defendant imposed the Supervision Requirement to discriminate against Plaintiff is insufficiently plausible on its face to state an ADA claim.

## 2.   Whether Defendant Violated the Fourteenth Amendment

Even if Defendant's imposition of the Supervision Requirement violated the ADA (or his allegations stated such a claim), Plaintiff has not shown it also violated the Fourteenth Amendment.   Plaintiff appears to say the Supervision Requirement violated his equal protection rights under the Fourteenth Amendment.   (*See, e.g.*, Dkt. 46 at 5–6 (claiming a violation of Plaintiff's "right to equal treatment in licensing" and referring to "the Fourteenth Amendment (equal treatment and equal protection under the law)").)   But he has not pled "discriminatory intent

or purpose," which is "a necessary prerequisite to any Equal Protection Clause claim." *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995). Plaintiff also has not identified a similarly situated comparator (a non-disabled doctor who had not practiced for nine years) whose medical license was reinstated without conditions like the Supervision Requirement. *See Mann v. Joseph*, 805 F. App'x 779, 785 (11th Cir. 2020) ("To plead a plausible claim that the officers violated his right to equal protection, Mann had to allege that (1) he is similarly situated with other persons who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race."); *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1203 (11th Cir. 2019) ("If the plaintiff has not been treated differently than a similarly situated comparator, no Equal Protection violation exists."); *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009) ("In order to state an equal protection claim, the plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably."); *Garner v. Bryson*, 2018 WL 9963836, at *6 (M.D. Ga. Jan. 12, 2018) (dismissing equal protection claim because

"Plaintiff has provided no information about any possible comparators"); *Stewart v. Fla. Dep't of Educ. & Voc Rehab Div.*, 2010 WL 3119790, at *2 (N.D. Fla. Aug. 5, 2010) ("Plaintiff must identify the existence of similarly situated individuals or there is no basis for an equal protection claim.").

Finally, "the disabled are not a suspect class, and thus a government's differential treatment of them is only entitled to rational basis review." *Rylee v. Chapman*, 316 F. App'x 901, 907 (11th Cir. 2009); *see Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) ("[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."). Under rational basis review, there is no equal protection violation if "there is any reasonably conceivable state of facts that could" suggest "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320. When Defendant reinstated Plaintiff's medical license subject to the Supervision Requirement, Plaintiff had not practiced medicine for more than nine years during a substantial portion of which he was mentally incompetent. As a result, Defendant could rationally have concluded the Supervision Requirement was necessary to protect the public and ensure the safety and wellbeing of Plaintiff's

patients. In other words, there was a rational basis for Defendant's alleged misconduct, which means there was no Fourteenth Amendment violation. *See Garrett*, 531 U.S. at 367–68 ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could [act] quite hardheadedly—and perhaps hardheartedly—" without violating the Constitution).

### 3.   Whether Congress Validly Abrogated Immunity

Because Plaintiff has not shown Defendant violated the Fourteenth Amendment by requiring him to comply with the Supervision Requirement, Plaintiff must show that "Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. "Congress may validly abrogate [sovereign] immunity if (1) it unequivocally expresses its intent to abrogate, and (2) it possesses the power to effectuate its intent" under Section 5 of the Fourteenth Amendment. *Nat'l Ass'n of the Deaf*, 945 F.3d at 1347. "Title II plainly expressed Congress's intent to abrogate Eleventh Amendment immunity." *Id.*; *see* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United

States from an action in Federal or State court of competent jurisdiction for a violation of [the ADA].").  So the question is whether Congress had the power to effectuate its intent to abrogate immunity for Plaintiff's specific Title II claim here.

That question is governed by yet another three-part test under which the Court must (1) "identify[] the particular constitutional right at stake" (*i.e.*, the specific Fourteenth Amendment right sought to be enforced by Title II on the facts of this case); (2) "look to whether there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary" to enforce that right; and (3) "determine whether Title II is an appropriate response to this history and pattern of unequal treatment." *Nat'l Ass'n of the Deaf*, 945 F.3d at 1348.  The Court must conduct this analysis "on an individual or as-applied basis in light of the particular constitutional rights at stake in the relevant category of public services." *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005); *see Nat'l Ass'n of the Deaf*, 945 F.3d at 1348 ("We must . . . start by identifying the particular constitutional right at stake and by analyzing the particular

services at issue.").[10]   The test is designed to ensure that prophylactic legislation abrogates immunity only where it "exhibits a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Ass'n for Disabled Americans*, 405 F.3d at 957.

---

[10] It is not always clear that the second prong of the test requires this "as-applied" analysis.   In *Lane*, for example, the Supreme Court "considered the [historical] record supporting Title II *as a whole*" rather than focusing only on the history of discrimination surrounding the specific right and services at issue. *Nat'l Ass'n of the Deaf*, 945 F.3d at 1350; *Ass'n for Disabled Americans*, 405 F.3d at 958.   But the Eleventh Circuit has not taken a clear position on this issue.   Although it has repeatedly noted the general historical discussion in *Lane*, it has also considered the "history of discrimination for the [specific] rights implicated" in the cases at hand. *Nat'l Ass'n of the Deaf*, 945 F.3d at 1350; *Ass'n for Disabled Americans*, 405 F.3d at 958.   And, even in *Lane*, notwithstanding its broader historical discussion, the Supreme Court also considered Congress's historical findings "with respect to the particular services at issue in th[e] case." *Lane*, 541 U.S. at 527; *see Guttman*, 669 F.3d at 1117–18.   Ultimately, it makes no difference here whether the second prong of the test focuses on the historical record of disability discrimination in public services generally or on the at-issue right specifically.   The result in this case would be the same under either approach, including because the specific historical record is relevant under the third prong of the analysis even if it is not relevant under the second.   *See Toledo v. Sanchez*, 454 F.3d 24, 35 (1st Cir. 2006) ("It is necessary to understand the specific constitutional rights and the history of constitutional violations in the particular area at issue in order to determine the congruence and proportionality of Title II's measures in that area.").

In *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012), the Tenth Circuit applied this test to the same kind of Title II claim asserted by Plaintiff here.  The *Guttman* plaintiff was a physician with a history of depression and post-traumatic stress disorder.  *Id.* at 1106.  The state medical board revoked his medical license because his "inability to interact professionally with others posed a danger to his patients" and "further treatment of his mental health problems was unlikely to succeed."  *Id.* at 1107.  Plaintiff sued the medical board under Title II of the ADA, claiming the board discriminatorily "revoked his medical license on the basis of his mental disability."  *Id.* at 1108, 1116.  The Tenth Circuit held his claim was barred by sovereign immunity because "Title II does not validly abrogate [states'] sovereign immunity in the context of professional licensing."  *Id.* at 1125.

The court first found (as this Court has done) that plaintiff did not establish an actual violation of the Fourteenth Amendment.  See *id.* at 1113–16.[11]  The court then applied the complex three-part test described above to determine whether Title II's abrogation of sovereign immunity

---

[11] Unlike in our case, the parties in *Guttman* stipulated that plaintiff stated a viable Title II claim, which meant the court was not required to resolve that issue.  *Guttman*, 669 F.3d at 1113.

for plaintiff's claim was nevertheless valid. *See id.* at 1116–25. The court

found it was not valid because:

(1) "[T]he right at issue [was] a disabled individual's right to practice in his chosen profession," which "does not invoke heightened scrutiny."

(2) "Congress has never specified a longstanding pattern of disability discrimination in professional licensing, much less any irrational discrimination that rose to the level of a constitutional violation."

(3) Title II was not "congruent and proportional to the specific class of violations at issue" because:

    a. "[S]tates have strong, historical interests in medical licensing, which touches on the core governmental function of promoting and protecting the general public welfare."

    b. "[T]he Constitution affords [states] significant discretion in the realm of professional licensing" because that area "does not implicate a traditional category of fundamental rights" and "persons with disabilities do not compose a suspect class."

    c. There is "very little evidence of a widespread pattern of irrational state discrimination in professional licensing."

    d. "Title II prohibits a significant range of state action in this realm that would easily survive rational basis review."

    e. Title II "inhibits a state's ability to safely and efficiently make professional licensing decisions."

*Id.* at 1118–20, 1123–24.

The Court agrees with the Tenth Circuit's analysis, which is

thorough, well-reasoned, and persuasive, and which applies directly to

Plaintiff's claim here.  *See Nichols v. Ala. State Bar*, 2015 WL 3823929, at *5–6 (N.D. Ala. June 19, 2015) (finding *Guttman* "instructive" and relying on it to hold that "Congress did not abrogate the states' Eleventh Amendment immunity against ADA claims regarding regulation of attorney conduct because the abrogation provision exceeds the scope of congressional authority provided by § 5 of the Fourteenth Amendment"). The Court thus holds, as *Guttman* did, that (1) "Title II does not validly abrogate [Georgia's] sovereign immunity in the context of professional licensing" and (2) Plaintiff's Title II claim for damages is barred by sovereign immunity.  *Id.* at 1125.  As a result, the Court grants Defendant's motion to dismiss, dismisses this case for lack of subject matter jurisdiction, and denies as moot the other motions pending in this case.[12]

---

[12] Plaintiff cites *Hason v. Medical Board of California*, 279 F.3d 1167 (9th Cir. 2002), for the proposition that Title II validly abrogated sovereign immunity in the context of professional licensing.  But *Hason* is not persuasive because it was decided before two key Supreme Court decisions involving the abrogation of sovereign immunity (*Lane* and *Georgia*), it provides little substantive discussion in support of its conclusion, and, without engaging in the required case-by-case analysis, it relies on general Ninth Circuit precedent that "in enacting Title II of the ADA Congress validly abrogated state sovereign immunity, and thus states and their agencies may be sued pursuant to Title II."  *Id.* at 1170–

## III.  Conclusion

The Court **GRANTS** Defendant's Pre-Answer Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 36) and **DISMISSES** this action for lack of subject matter jurisdiction.   The Court **DENIES AS MOOT** Plaintiff's Motion for a Settlement Conference (Dkt. 29), Motion for an Injunction (Dkt. 45), and Motion to Transfer to Alternative Dispute Resolution Center (Dkt. 51).

**SO ORDERED** this 30th day of December, 2020.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

71.  Moreover, even if the Court had subject matter jurisdiction over this case, it would dismiss Plaintiff's complaint on the merits because (as explained above) Plaintiff agreed to the Supervision Requirement and he has not shown Defendant imposed that requirement with discriminatory intent or "by reason of" Plaintiff's disability.  The Court would also deny Plaintiff's motions on the merits even if they were not moot.  Plaintiff's Motion for an Injunction is one paragraph long and includes no citation to authority or evidentiary support in violation of Local Rule 7.1(A)(1).  Plaintiff's motions for mediation and a settlement conference are premature because Defendant opposes them and they were filed before the Court's resolution of Defendant's motion to dismiss. Finally, Plaintiff's allegations, claims, and theories are not always clear or easy to follow.  To the extent the Court has misconstrued them, they violate the Court's prior order requiring Plaintiff to plead his claims with "clarity and precision."  (Dkt. 27 at 7.)